Peter M. Daly, J.
Application by a landlord to review and annul an order of the respondent which affirmed an order of a Local Eent Administrator determining that the apartment in question was subject to control and fixing the maximum rent therefor at $57.50 per month.
The premises in question are a two-family house in Corona. The landlord occupies a five-room apartment on the first floor. On June 17, 1957, at a time when the five-room apartment on the second floor was vacant and not subject to rent control, the landlord entered into a written one-month lease with one Zoila Perez at a rental of $100. Clause 20 of the lease expressly provided that the apartment was rented for occupancy by the four persons named therein, to wit, the tenant, Elizabeth Hernandez, Asencion De Hernandez and Isabel Gonzalez, and no others.
In her application for an order fixing the maximum rental for her apartment, which application was filed on May 8, 1958, Zoila Perez stated in substance that the apartment was occupied by herself, Elizabeth Hernandez, “Asuncion” Hernandez and Cecelia Baez, that “ There are two distinct families, or really three distinct occupancies, in this second floor five-room apartment,” that they share a kitchen and bathroom, cook on the premises and do their own housekeeping and that this was a *744 clear and distinct violation of subdivision 12 of section 9 of the State Eent and Eviction Begulations.
In answer to that application, the landlord stated in substance that when the tenant rented the apartment, she told him she was living with her aunt and cousins and requested that they be mentioned in the lease as having the right to live with her and that they were her immediate family. He had never met the tenant before then and knew nothing about her. By substituting Cecelia Baez for Isabel Gonzalez, the tenant had violated a substantial obligation of her lease. In addition, there were other people occupying the apartment whose names the landlord was trying to ascertain, but the tenant was keeping them secret. The landlord also submitted an affidavit by the real estate salesman through whom the apartment had been rented which corroborated in all essential respects the statements made in the landlord’s affidavit.
At the hearing before the Local Eent Administrator, the tenant testified in substance as follows: When she went to look at the apartment, she told the landlord that she would take it for her family. She told him that Elizabeth Hernandez, Aseneion Hernandez and Cecelia Baez were her family. Theretofore she had lived with Elizabeth Hernandez in Tiffany Street and the others had lived in Colombia. Isabel Gonzalez was a friend of hers who had left for Colombia and who had never seen the apartment. Aseneion Hernandez is the tenant’s aunt, age about 45. Elizabeth Hernandez is Asencion’s daughter, 22 years of age and single, and Cecelia Baez is the tenant’s friend, age about 25. The tenant’s cousin, Alberto Gomez, age 24, had also been living in the apartment since his arrival from Colombia to visit New York about a month before. When the tenant rented the apartment, she told the landlord and the real estate salesman that she earned $45 a week and could not afford to pay $100 a month rent and requested permission of the landlord to rent one room to Cecelia Baez. Cecelia Baez pays the tenant $35 a month rent. She also receives $35 a month for room and board from Mrs. Hernandez and her daughter. Alberto Gomez pays no rent; he is only a visitor. The furniture in the apartment is the tenant’s. Everybody does the cooking and they eat together. At the time of the renting, the landlord told the tenant that she could collect the rent from the family and give it to him. She told the real estate agent substantially the same facts.
The tenant produced no one to corroborate her testimony.
The testimony of the landlord and the real estate salesman differed in all material respects from that of the tenant. It also *745 appeared that the landlord had expended about $400 to remove violations on the premises and prepare the apartment for occupancy.
On that record, the Local Rent Administrator determined that the apartment was subject to rent control and fixed the maximum monthly rent therefor at $57.50. Respondent affirmed, stating in crucial part as follows:
“ Concededly, the present occupancy of the subject apartment consists of the tenant, her aunt, two cousins, and another woman who is not related to the tenant. The landlord, in his protest, alleges, ‘ * * * that this tenant has been running a racket by subletting various parts of the apartment to strangers unrelated to her; not a part of her immediate family and contrary to the terms of the written lease and the wishes of the landlord * * * Whatever was done to divide the apartment in separate occupancies was done by the tenant, Zoila Perez contrary to the wishes of the landlord * * * ’
‘1 Accordingly, it is rather clear that the subject apartment is being used for other than single family occupancy. Therefore, the Administrator finds it cannot qualify for decontrol under Section 9(12) of the Regulations. The landlord, however, may resort to his remedies at law with respect to the claimed violation of the agreement of lease by the tenant. ’ ’
In the opinion of this court respondent’s determination cannot stand. Section 9 of the State Rent and Eviction Regulations specifies the housing accommodations which are not subject to rent control. Among such are those specified in subdivision 12, to wit: “ Housing accommodations in one- or two-family houses which are or become vacant on or after April 1, 1953, provided, however, that this exemption shall remain effective only so long as the housing accommodations are not rented for other than single family occupancy.” Nowhere in its opinion does the respondent indicate that the basis for its decision was that these accommodations were not “ rented” for other than single-family occupancy. Indeed, it could hardly have done so. Subdivision 12 of section 9 does not talk about immediate family occupancy, but single-family occupancy. Certainly, persons not related in the degree required by section 55 of the State Rent and Eviction Regulations in order to enable a landlord to obtain a certificate of eviction, may, nevertheless, constitute a ‘ ‘ single family ” within the meaning of subdivision 12 of section 9. (Cf. Matter of Osborne v. Weaver, 7 A D 2d 653.) Nor should the circumstance that members of a family contribute towards the payment of the rent convert what would otherwise be a single-family occupancy into a multiple-family occupancy.
*746 The basis, rather, for the respondent’s determination seems to be that these premises were being “ used ” for other than single-family occupancy. If that be so, it is attributable to the wrongful act of the tenant in direct violation of the express provisions of the lease, and so far as this record shows, contrary to the wishes and over the express objection of the landlord. One should not be permitted to profit from one’s own wrong.
Section 16 of the regulations, which provides that “ An agreement by the tenant to waive the benefit of any provision of the Act or these Regulations is void ”, cannot aid the tenant here. “ This provision was not intended to encourage or abet fraudulent practices by a tenant against the landlord * * * It protects tenants unfamiliar with the law or the legal effect of certain agreements.” (Matter of Parkell Realty Co. v. Weaver, 10 Misc 2d 889, 892.)
In view of the foregoing, the application is granted and the determination of respondent annulled.
Submit order.